


**FILED**
May 15, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____wg_____
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v<br><br>(1) HOMERO ZAMORANO JR.,<br>(4) FELIPE ORDUNA-TORRES<br>   aka Cholo<br>   aka Chuequito/Chuekito<br>   aka Negro,<br><br>(7) ARMANDO GONZALES-ORTEGA<br>   aka El Don<br>   aka Don Gon,<br><br>Defendants | 5:22:CR-00366-OLG<br><br>**3rd SUPERSEDING INDICTMENT**<br><br>**COUNT 1:** Vio: 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(B)(iii) & (a)(1)(B)(iv): Conspiracy to Transport Aliens Resulting in Death, Causing Serious Bodily Injury and Placing Lives in Jeopardy<br><br>**COUNT 2:** Vio: 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II) & (a)(1)(B)(iv): Transportation of Illegal Aliens Resulting in Death<br><br>**COUNT 3:** Vio: 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II) & (a)(1)(B)(iii): Transportation of Illegal Aliens Causing Serious Bodily Injury and Placing Lives in Jeopardy |

**THE GRAND JURY CHARGES:**

### Introduction

1. From on or about June 2020 through June 2022, the defendants, **HOMERO ZAMORANO JR., FELIPE ORDUNA-TORRES,** _____, **ARMANDO GONZALES-ORTEGA,** and others (collectively "smugglers"), participated in a human smuggling organization which illegally brought adults and children from Guatemala, Honduras, El Salvador, and Mexico (collectively "aliens") into the United States. The aliens were not U.S. citizens and did not have prior official authorization from the U.S. government to come

to, enter, and reside in the United States.

2. Each alien, or their families and friends, paid money, generally the equivalent of $12,000-$15,000, to individuals in Guatemala, Honduras, El Salvador, Mexico, the United States, and elsewhere, to be transported illegally into the United States. This fee normally included multiple "attempts"—that is, if the alien was caught by U.S. law enforcement at or near the border and deported, the organization would smuggle them into the United States again for no additional fee.

3. The smugglers worked in concert with each other to transport, and facilitate the transportation of, the aliens, utilizing each other's routes, guides, stash houses, trucks, trailers, and transporters. This association enabled the smugglers to consolidate costs, spread risk, and operate more profitably.

4. To ensure proper accounting, each alien was given a code word—the "clave"—to provide at various points along their journey. These code words established that the alien was a "customer" of a smuggler who had arranged access for that portion of the journey, be it a stay at a stash house, a ride in a vehicle, or the assistance of a guide.

5. Once in the United States, the aliens were to be transported to various destinations within the United States, including San Antonio, other areas within the Western District of Texas, and beyond.

6. The smugglers operating in the United States worked in concert with smugglers operating in Guatemala, Honduras, El Salvador, and Mexico.

7. The organization maintained a variety of tractors and trailers, which it used to transport aliens from near the United States border to San Antonio. Some of these tractors and trailers were stored at a private parking lot in San Antonio.

8. Members of the organization managed stash houses along the border and coordinators

worked to consolidate aliens from these stash houses into larger groups that could be transported in tractor-trailer loads from Laredo to San Antonio. Members of the organization recruited and coordinated drivers for various loads of aliens.

9. In the days leading up to June 27, 2022, **ORDUNA-TORRES**, and others, exchanged the names of aliens who would be transported in an upcoming tractor-trailer load.

10. On June 27, 2022, the defendants charged herein, and others, facilitated and coordinated the retrieval of an empty tractor-trailer and the corresponding hand-off of the tractor-trailer to a driver in San Antonio.

11. The organization recruited **ZAMORANO** to drive the tractor-trailer, as he had done previously. **ZAMORANO** was driven from Palestine, Texas to a gas station in San Antonio, where he picked up the empty tractor-trailer. **ZAMORANO** was to be paid for his role.

12. **ZAMORANO** then drove the tractor-trailer to Laredo, where groups of aliens were transported in box trucks from stash houses to the location of the tractor-trailer. **ZAMORANO** received the load-up address from a co-conspirator, who was provided it by **ORDUNA-TORRES**. **GONZALES-ORTEGA** also traveled to Laredo and met the tractor-trailer at the load-up location. In total, at least 64 aliens were loaded into the back of the 53-foot trailer, including eight children and one pregnant woman.

13. The aliens were told to give up their cell phones prior to entering the trailer and were instructed to keep quiet on the journey. An unknown powder was dispensed in the back of the trailer to mask the smell of the human cargo from detection K-9s at U.S. Border Patrol Checkpoints.

14. Once the trailer was loaded with the aliens, **ZAMORANO** drove it north along IH-35 to

San Antonio. **GONZALES-ORTEGA** returned to San Antonio as well.

15. Throughout the transport, **ORDUNA-TORRES**, **GONZALES-ORTEGA**, and others, coordinated, facilitated, passed messages, and made each other aware of the tractor-trailer's progress. Some messages and instructions were passed to **ZAMORANO**.

16. Known to some of the defendants charged herein, the trailer's air-conditioning unit was not working properly and did not blow any cool air to the aliens inside.

17. As the temperature inside the trailer rose, chaos ensued. Some aliens screamed and banged on the walls for help. Others kicked and clawed at the sides of the trailer attempting to escape. Most eventually passed out, unconscious.

18. After making the approximate 3-hour journey, the tractor-trailer arrived at the designated unloading location along Quintana Road in San Antonio. The location is easily accessible from IH-35, but is desolate, private, and experiences little traffic. Members of the organization met the tractor-trailer, planning to transport aliens in smaller loads to various destinations.

19. When the doors to the trailer were opened, 48 of the aliens were either already dead or died on site, including one who was pregnant. Members of the organization immediately transported away at least two aliens who were still alive. Other members fled the location after discovering so many of the aliens had died. **ZAMORANO** was found hiding in the nearby brush by responding law enforcement.

20. Fifteen aliens were transported to hospitals—5 of those died.

21. Of the 53 total aliens who perished, 26 were Mexican nationals, 21 were Guatemalan nationals, and 6 were Honduran nationals.

## COUNT ONE
### Conspiracy to Transport Aliens Resulting in Death, Causing Serious Bodily Injury and Placing Lives in Jeopardy
### 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(B)(iii) & (a)(1)(B)(iv)

22.   Paragraphs 1 through 21 of this Indictment are realleged and incorporated as though fully set forth herein.

23.   Beginning on or about June 2020, and continuing through on or about June 27, 2022, in the Western District of Texas, Southern District of Texas, and elsewhere, Defendants,

**(1) HOMERO ZAMORANO JR.,**
**(4) FELIPE ORDUNA-TORRES aka "Cholo," aka "Chueauito/Chuekito," aka "Negro,"**
**(7) ARMANDO GONZALES-ORTEGA aka "El Don," aka "Don Gon,"**

and others, knowing and in reckless disregard of the fact that aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other, to transport, move, and attempt to transport and move, said aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, and the offense resulted in the death of at least one person, and during and in relation to which the defendants caused serious bodily injury to, and placed in jeopardy the life of, at least one person, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(B)(iii), and (a)(1)(B)(iv).

## COUNT TWO
### Transportation of Aliens Resulting in Death
### 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II) & (a)(1)(B)(iv)

24.   Paragraphs 1 through 21 of this Indictment are realleged and incorporated as though fully set forth herein.

25.   Beginning on or about June 25, 2022, and continuing through on or about June 27, 2022, in the Western District of Texas, Southern District of Texas, and elsewhere, Defendants,

**(1) HOMERO ZAMORANO JR.,**
**(4) FELIPE ORDUNA-TORRES aka "Cholo," aka "Chuequito/Chuekito," aka "Negro,"**

**(7) ARMANDO GONZALES-ORTEGA aka "El Don," aka "Don Gon,"**

and others, aided and abetted by each other, knowing and in reckless disregard of the fact that aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally transport, move, and attempt to transport and move, said aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, and the offense resulted in the death of at least one person, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(iv).

## COUNT THREE
### Transportation of Aliens Causing Serious Bodily Injury and Placing Lives in Jeopardy
### 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II) & (a)(1)(B)(iii)

26. Paragraphs 1 through 21 of this Indictment are realleged and incorporated as though fully set forth herein.

27. Beginning on or about June 25, 2022, and continuing through on or about June 27, 2022, in the Western District of Texas, Southern District of Texas, and elsewhere, Defendants,

**(1) HOMERO ZAMORANO JR.,**
**(4) FELIPE ORDUNA-TORRES aka "Cholo," aka "Chuequito/Chuekito," aka "Negro,"**

**(7) ARMANDO GONZALES-ORTEGA aka "El Don," aka "Don Gon,"**

and others, aided and abetted by each other, knowing and in reckless disregard of the fact that aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally transport, move, and attempt to transport and move, said aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, during and in relation to which the defendants caused serious bodily injury to, and placed in jeopardy the life of, at least one person, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii),

(a)(1)(A)(v)(II), and (a)(1)(B)(iii).

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* FED. R. CRIM. P. 32.2]

### I.
### Immigration Violations and Forfeiture Statute
[Title 8 U.S.C. § 1324(a)(1)(A)(ii)/(v)(I)/(v)(II),
subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(6)(A)]

As a result of the foregoing criminal violations set forth in Counts One to Three, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of property, including any items listed below, upon conviction and as a part of sentence pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 982(a)(6)(A) which states the following:

**Title 18 U.S.C. § 982 Criminal forfeiture**
(a)(6)(A) The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate, section 274(a) . . . of the Immigration and Nationality Act . . . shall order that the person forfeit to the United States, regardless of any provision of State law—
  (i) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted; and
  (ii) any property real or personal—
    (I) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or
    (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

This Notice of Demand for Forfeiture includes but is not limited to the following.

1. 1995 Phoenix Ultra refrigerated trailer, VIN 1UYVS2530SU244808 seized from Homero Zamorano, Jr.;

2. 2008 Volvo semi-truck, VIN: 4V4NC9EJ58N265065 seized from Homero Zamorano, Jr.;

3. $59,445.50, More or Less, in United States Currency seized from Felipe Orduna-Torres;

4. 2016 GMC Sierra Truck, Texas License Plate: NZV 8389, VIN: 3GTU2PECXGG220288 seized from Felipe Orduna-Torres;

7

5. 2015 Cadillac Escalade, Texas License Plate: SXT 5441, VIN: 1GYS4CKJ3FR259973 seized from Felipe Orduna-Torres;
6. 2017 Ford F-350 Super Duty Truck, Texas License Plate: SHV 3141; VIN: 1FT8W3DT1HED65986 seized from Felipe Orduna-Torres;
7. Doppio F1811 cell phone, IMEI 353761327522736 seized from Felipe Orduna-Torres;
8. LG Cricket LM-K400AM cell phone, IMEI 352074113464787 seized from Felipe Orduna-Torres;
9. LG LM-X220MA cell phone, IMEI 352533-10-763790-6 seized from Felipe Orduna-Torres; and
10. iPhone 13 Mini MLHQ3LL/A cell phone, IMEI 35 237763 864728 5 seized from Felipe Orduna-Torres.

## II.
## Money Judgment

**Money Judgment:** A sum of money equal to **$41,000.00** which constitutes the proceeds from the immigration violations that were used for improvements made to the residence located at 5551 Knoll Krest Drive, San Antonio, Texas, for which Defendant Felipe Orduna-Torres is solely liable.

## III.
## Substitute Property

If any of the proceeds from the immigration violations referenced in paragraph II, as a result of any act or omission of Defendant Felipe Orduna-Torres —

(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property of Defendant Felipe Orduna-Torres, up to the value of the money judgment, as substitute property pursuant to Title 21 U.S.C. § 853(p) and FED. R. CRIM. P. 32.2(e).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

JAIME ESPARZA
UNITED STATES ATTORNEY

BY: _____
ERIC FUCHS
SARAH SPEARS
AMANDA BROWN
Assistant United States Attorneys