UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § § | CAUSE NO. 5:22-CR-00366-OLG |
| HOMERO ZAMORANO, JR. | § § § | |

### DEFENDANT ZAMORANO'S MOTION TO DISMISS OR SUPPRESS FOR OUTRAGEOUS GOVERNMENT CONDUCT

TO THE HONORABLE ORLANDO L. GARCIA, UNITED STATES DISTRICT JUDGE:

On June 27, 2022, Homero Zamorano was arrested near a tractor-trailer that contained a cargo of undocumented migrants suffering from heat exhaustion. Of the 66 in the load, 53 perished from hyperthermia that resulted from a broken reefer unit that failed to cool the trailer carrying the migrants. This tragedy was easily preventable had the government simply acted on information it had in its possession for months leading up to the tragedy. This neglect was inexcusable and outrageous. Under these unique circumstances, due process principles operate to bar the government from invoking judicial process to obtain a conviction or aggravated sentence against Mr. Zamorano. *See, Rochin v. California,* 342 U.S. 165 (1952) (outrageous acts by deputy sheriffs to secure evidence from defendant violated due process and required suppression of evidence).

### BACKGROUND

Two months earlier, the government possessed the information it needed to have prevented this tragedy from occurring. On April 29, 2022, at about 5:25 PM, the Border Patrol stopped a tractor trailer going through the checkpoint north of Laredo because of a dog alert. This was the same checkpoint that Zamorano would later pass through in late June. Border Patrol agents found

1

98 undocumented migrants crowded inside the trailer. Exhibit 1. The temperature inside the trailer measured 80 degrees. Exhibit 2. The driver cooperated immediately. He told investigators a man called "Gordo" hired him to drive the load and gave them two phone numbers for "Gordo." A law enforcement database linked Christian Martrinez to one of the phone numbers. At 1:10 AM, the next morning, the driver positively identified Christian Martinez from a photo array as "Gordo;" he drew a circle around his picture and wrote down the date and time. Exhibit 3.

When Zamorano was arrested two months later, his cell phone contained numerous text messages from Christian Martinez using the same phone number from the April 29, mass alien smuggling event. The texts asked Zamorano to report his whereabouts. These messages made clear that Zamorano was another driver hired by Martinez. Although authorities knew that Martinez was hiring drivers to haul migrants in tractor trailer rigs, they did nothing to arrest him. Their failure to act allowed the conspiracy to continue. It allowed Martinez to employ Zamorano. This in turn allowed the migrants to perish in the tractor trailer that Zamorano drove for Martinez.

**ARGUMENT**

Due process of law requires the government to act so as not to "offend … canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offense." *Rochin,* 342 U.S. at 169 (*quoting, Malinksi v. People of the State of New York,* 324 U.S. 401, 416-417 (1945)). In *Rochin*, the Supreme Court found these canons to be violated by deputy sheriffs who illegally entered the defendant's home, struggled to open his mouth to remove what was there, then forcibly extracted the contents of his stomach to obtain evidence. The *Rochin* decision found this conduct was "bound to offend even hardened sensibilities." *Id.* at 172. To sanction this "brutal conduct," the Court found it necessary to

suppress the evidence. *Id.* at 174. Doing nothing "would be to afford brutality the cloak of law." *Id.* at 173.

This case involves the flipside of an overzealous and unrestrained investigation. This concerns no investigation whatsoever. Here the government's failure to act to prevent the tragedy that occurred offends what *Rochin* describes as "canons of decency and fairness." *Id.* at 169. The government was obligated to act on information it possessed to disrupt the life-threatening transportation of migrants through the Laredo checkpoint in tractor trailers. There can be no excuse for doing nothing. The loss of 53 lives at the hands of this alien smuggling conspiracy was foreseeable and preventable.

We are protected under the Constitution of the United States from having state actors harm us through deliberate indifference. *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir. 1994 (en banc) (school principal, who knew of signs of abuse on student and failed to investigate, could be sued by student for violating student's substantive due process rights). This protection extends beyond harms directly done by state actors. A cause of action also arises where state actors violate a person's due process rights by outrageously failing to prevent harm from others. *See, e.g., Wood v. Ostrander,* 879 F.2d 583, 589-90 (9th Cir. 1989).

This is known as the "state-created danger" doctrine. While the Fifth Circuit has yet to adopt this doctrine, it has not rejected it. *Fisher v. Moore,* 734 F.4th 367, 368 (5th Cir. 2023), *cert. denied,* 144 S.Ct. 569 (2024). Most federal courts recognize the "state-created danger" doctrine. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. keys,* 675 F.3d 849, 863 n. 8 (5th Cir. 2012) (en banc). This extends to federal agents who have come under scrutiny for violating the "state-created danger" doctrine. For example, in *Velez-Diaz v. Vega-Irizarry,* 421 F.3d 71, 81 (1st

Cir. 2005), the court scrutinized such a claim where federal agents allowed a cooperating witness to be killed.

Courts applying the state-created danger doctrine often require that the government actor's "failure to protect" the victim "shocks the conscience*." Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (cleaned up); *see also Uhlrig v. Harder*, 64 F.3d 567, 573–74 (10th Cir. 1995). The Fifth Circuit too has explained that the state-created danger theory of recovery would be satisfied by government conduct that, using the words of *Rochin*, "shocks the conscience." *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Rochin*, 342 U.S. at 172-73)).[1] And the Fifth Circuit has further explained that government officials can shock the conscience by treating the victim with "deliberate indifference," *id.* at 326, the same standard the Fifth Circuit used in *Doe v. Taylor*, 15 F.3d at 456-57, to find a viable claim against the principal for failing to prevent a student's molestation. *See also Whitley v. Hanna*, 726 F.3d 631, 651 n.2 (5th Cir. 2013) (Elrod, J., concurring) (often "what shocks the conscience is 'deliberate indifference'") (citing *Lewis*, 523 U.S. at 851). "To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety." *McClendon*, 305 F.3d at 326 n.8 (cleaned up).

Here, federal agents acted with such outrageously deliberate indifference towards the migrants in this case that their conduct shocks the conscience and thereby violates due process. To see why, compare this case to *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993). There, the Seventh Circuit held the plaintiffs stated a viable claim for a due process violation where the defendant-police officers "removed [an apparently sober] driver, . . . and left behind a passenger, whom they

---

[1] The Fifth Circuit has also suggested that a due process conscience-shocking claim may be separate from a state-created danger theory. *See Doe ex rel. Magee*, 675 F.3d at 867–69 (though rejecting claim in case). Either way, due process forbids outrageous government conduct.

4

knew to be drunk, with the car keys." *Id.* at 1127. The passenger then drove the car and collided head-on with a family, killing the pregnant mother, causing brain damage to one child, and injuring the other occupants. *See id.* at 1123-24.

Like *Reed,* the agents here acted with shocking deliberate indifference. They did nothing to stop Christian Martinez from hiring drivers to haul migrants in tractor trailers. For the two months leading up to the death of the 52 migrants, the agents knew of Martinez's role in recruiting drivers to smuggle large numbers of aliens under life threatening conditions. A driver arrested at the checkpoint north of Laredo on April 29, 2022, positively identified Martinez as the man who hired him. The driver told the agents the conspiracy was ongoing. He said this was his third trip. Martinez even identified another conspirator, "Cowboy," as being involved in the smuggling enterprise. "Cowboy" was later indicted in this alien smuggling conspiracy.

Other investigative leads, although less clear and direct, were also available to investigators to help stop the alien smuggling conspiracy that resulted in the deaths. For example, on March 30, 2022, a driver was arrested at the Laredo checkpoint with 107 migrants concealed in a trailer. The refrigeration unit had failed. When the trailer doors were open the temperature inside was recorded at 98 degrees. Martinez later said during his post-arrest interrogation on June 29, 2022, that he also hired this driver for the conspiracy. Had the government searched this driver's phone, its contents would have shown Martinez's role in hiring him. The driver later confirmed this fact to investigators.

In addition, the semi-truck driven by Zamorano was registered to an address in San Antonio. Records checks show that 8 out of 11 semi-trucks, and 5 out of 6 trailers, registered to this address were interdicted in human smuggling incidents involving migrants travelling inside trailers. It appears that the government simply arrested and prosecuted each low-level driver and

left the ring to continue operating.  This inaction was like the officers in *Reed* who allowed the drunk passenger to operate the vehicle. But unlike *Reed,* which involved one decision, this inaction was part of a greater pattern over the course of a year and half that predictably led to 53 deaths.

Just as "dangers presented by drunk drivers are familiar and specific," *Reed*, 986 F.2d at 1127, so are the dangers presented by transporting humans in semi-trailers. *See, e.g., United States v. Williams*, 610 F.3d 271, 274–75 (5th Cir. 2010) (case involved 19 migrant deaths from heat while being transported in a semitrailer in south Texas, due to lack of air conditioning).[2] Despite having knowledge of these migrant tragedies, and despite having the tools needed to shut the smuggling ring down, the government allowed it to continue.  This lapse of inaction supports a finding of deliberate indifference.   *See Whitley*, 726 F.3d at 651 n.2 (Elrod, J., concurring) ("'deliberate indifference'" that "shocks the conscience" requires time for "actual deliberation") (citing *Lewis*, 523 U.S. at 851).

If a school principal's failure to appropriately intervene to stop a teacher's molestation of one high schooler amounted to a feasible claim of deliberate indifference in violation of due process, *see Doe v. Taylor*, 15 F.3d at 456-57, and if deliberate indifference can satisfy *Rochin*'s conscience-shocking standard, *see McClendon*, 305 F.3d at 326, then the outrageous investigative laxity here—leading to 53 deaths from heat exhaustion—should shock the conscience too. *See Doe v. Taylor*, 15 F.3d at 457 (principal "demonstrated deliberate indifference to the offensive acts by failing to take action that was obviously necessary to prevent or stop [the teacher's] abuse"); *see also Reed*, 986 F.2d at 1127 ("Some dangers are so evident . . . that state actors can be held accountable by any injured party"); *White v. Rochford*, 592 F.2d 381, 382 (7th Cir. 1979) (holding

---

[2] *See also* Faith Karimi, *9 people dead after sweltering tractor-trailer found at San Antonio Walmart* (24 July 2017), Cnn.com, *available at* https://www.cnn.com/2017/07/23/us/san-antonio-bodies-found-in-trailer/index.html (last accessed 2 Sep. 2024).

plaintiff-children pleaded viable claim of conscience-shocking due process violation under *Rochin*, where officers arrested their uncle and abandoned them on the side of the road in the cold, leading to psychological injury and one asthmatic child being hospitalized for a week).[3]

Here, if the agents had properly investigated their prior leads, this tragedy never would have occurred, and Zamorano—who, on the government's own allegations, was just a low-level-recruit driver—never would have become involved in the ring. Under *Rochin* and *United States v. Russell*, 411 U.S. 423, 431–32 (1973), the Court should either dismiss Zamorano's charges or suppress all evidence against him.

At a minimum, if the Court will not grant either remedy, the Court should strike the elements that aggravate the alien smuggling offenses for causing injury, jeopardy or death. This will prevent the government from obtaining up to 20-year or life sentences for injury or deaths that resulted from the government's own outrageous inaction. This remedy enforces the due process clause's mandate that the government act in harmony with "canons of decency and fairness." *Rochin*, 342 U.S. at 169 (*quoting, Malinksi v. People of the State of New York,* 324 U.S. 401, 416-417 (1945)). Without this sanction, the government suffers no consequence for its inexcusable failure to act and prevent this tragedy from occurring.

---

[3] For another example, the plaintiffs in the federal suit over the Uvalde school shooting have alleged a due process violation by state-created danger, based on the failure to take appropriate action. *See J.P., et al. v. Uvalde Consolidated Independent School District*, No. 2:23-cv-00015-AM, Doc. 15 at pp. 53-55 ¶¶ 181 & 186 (WDTX 22 Feb. 2023) (Amended Complaint).

## CONCLUSION

For the agents' outrageous due process violation, Zamorano asks the Court to dismiss his charges with prejudice or to suppress all evidence against him. Or at least, he asks the Court to dismiss all "resulting in the death of any person" penalty elements, also with prejudice.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender


/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025 / (512) 916-5035 (FAX)
Bar Number: Texas 08135700

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of same to:

Sarah Spears
Amanda Brown
Eric Fuchs
U.S. Attorney's Office
601 N. W. Loop 410, Suite 600
San Antonio, Texas 78216-5512

/s/ JOSE I. GONZALEZ-FALLA
*Attorney for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CAUSE NO. 5:22-cr-00366-OLG |
| HOMERO ZAMORANO, JR. | § § § | |

**ORDER GRANTING DEFENDANT ZAMORANO'S MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT MISCONDUCT**

The Court hereby **GRANTS** Defendant Zamorano's Motion to Dismiss for Outrageous Government Conduct. All charges against Zamorano are **DISMISSED WITH PREJUDICE**.

SO ORDERED on this the _____ day of _____, 2024.

_____
ORLANDO L. GARCIA
United States District Judge