IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § § | SA-22-CR-00366-OLG |
| vs. | § § § | |
| (1) HOMERO ZAMORANO JR., | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

  This Report and Recommendation concerns Defendant's Motion to Dismiss or Suppress for Outrageous Government Conduct [#285] and Defendant's Motion to Dismiss Charging Statute's Penalty Provisions as Void for Vagueness [#286], which were referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C.  The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The Government has filed responses in opposition to the motions [#288, #289], to which Defendant has filed replies [#203, #304].  After considering the parties' filings and for the reasons set forth below, it is recommended that Defendant's motions be denied.

**I.  Background**

  Defendant Homero Zamorano, Jr., is charged with participating in a human smuggling organization illegally bringing adults and children from Guatemala, Honduras, El Salvador, and Mexico into the United States.  (Redacted Indictment [#256].)  The Government alleges that

1

Defendant was recruited as the driver of a tractor-trailer used to smuggle a group of at least 64 migrants from Laredo to San Antonio, Texas, on June 27, 2022. (*Id.*) The trailer's air-conditioning unit was not functioning, and when Defendant arrived at the unloading location in San Antonio, 48 of the migrants were either already dead or died on site due to heat exhaustion. (*Id.*) Fifteen migrants were transported to hospitals, five of whom died while receiving medical care. (*Id.*)

The Third Superseding Indictment charges Defendant with one count of alien-smuggling conspiracy and two alien-smuggling counts for transportation of illegal aliens resulting in death, causing serious bodily injury, and placing lives in jeopardy. Defendant has filed two motions to dismiss. The first motion argues that the Court should dismiss the indictment or strike the aggravating elements of the alien smuggling offenses for causing injury, jeopardy, or death because the Government engaged in outrageous misconduct. The second motion argues the Court should dismiss the penalty elements of the indictment because the penalty elements are unconstitutionally vague in violation of due process. The Court should deny both motions.

## II.  Motion to Dismiss for Outrageous Government Conduct

Defendant argues that the Court should dismiss the indictment because the Government engaged in outrageous conduct by not dismantling the conspiracy at an earlier date, which would have prevented the tragedy underlying this suit from ever occurring. According to Defendant, Border Patrol agents stopped at least 11 migrant loads linked to the criminal conspiracy in the 18 months before the smuggling event at issue, and many of those loads involved trucks and trailers registered to the same address as the truck driven by Defendant. Defendant further contends that there is evidence that the Government knew some of these loads involved migrants smuggled in tractor-trailers in which the refrigeration units had failed. Defendant asserts the Government had

specific knowledge of the identity of the man who employed the drivers (including Defendant) in April 2022, but took no action to pursue his arrest, instead focusing only on low-level prosecutions of other hired drivers.

An indictment may be dismissed on the basis of outrageous government conduct when governmental participation is "so outrageous or fundamentally unfair" as to move the courts "to hold that the defendant was entrapped as a matter of law." *United States v. Graves*, 556 F.2d 1319, 1322 (5th Cir.1977) (internal quotation and citation omitted). "[A] defendant who asserts the defense of outrageous government conduct has an extremely high burden of proof." *United States v. Asibor,* 109 F.3d 1023, 1039 (5th Cir. 1997). "Government misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment." *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (internal quotation and citation omitted). Outrageous government conduct will only be found in the "rarest" of circumstances. *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009) (quoting *Johnson*, 68 F.3d at 902).

Defendant does not allege that the Government was actively involved in the conspiracy or that the Government took any action to entrap Defendant in order to prosecute him for alien smuggling. Rather, Defendant contends that the Government's inaction offends due process. The Fifth Circuit has never extended the defense of outrageous government conduct to embrace government inaction. And the Court is foreclosed from extending it here. The Fifth Circuit has repeatedly emphasized that "the outrageous-conduct defense requires not only government overinvolvement in the charged crime but a passive role by the defendant as well." *United States v. Arteaga*, 807 F.2d 424, 427 (5th Cir. 1986). "A defendant who actively participates in the crime may not avail himself of the defense." *Id.* Here, because Defendant is accused of actively

3

participating in and being a willing participant of the conspiracy, he cannot avail himself of the defense of outrageous government conduct. *See United States v. Ivey*, 949 F.2d 759, 769 (5th Cir. 1991) (rejecting defense where defendant willingly and actively returned to purchase bobcat hides illegally imported from Mexico, despite government soliciting defendant's purchase); *United States v. Evans*, 941 F.2d 267, 270–71 (5th Cir. 1991) (rejecting defense because defendant did not have a passive role in offense but rather was "predisposed active participant" in drug activities, despite government assisting defendant with manufacturing of drugs); *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir. 1985) (rejecting defense where defendant was active participant in drug transaction even though transaction was initiated by government's confidential informants). The Court may not apply the defense here where there was neither outrageous Government action nor passive inaction by Defendant.

Additionally, there is no legal basis for embracing Defendant's alterative argument—that the Court should apply the state-created-danger doctrine to find the Government is responsible for failing to protect the deceased and injured migrants such that Defendant's indictment should be dismissed. The state-created-danger doctrine is an exception from the general rule that the Due Process Clause does not require the government to protect its citizens from the acts of private actors. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312–13 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). This doctrine has been developed in the context of civil rights litigation, not criminal law, and stands for the principle that a "state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result." *Id.* at 313. The doctrine has never been recognized in the Fifth Circuit, even though the majority of other circuit court of appeals recognize the doctrine. *Fisher v. Moore*, 73 F.4th 367, 372–73 (5th Cir. 2024) (noting the court's hesitancy "to

expand the reach of substantive due process" in light of recent Supreme Court precedent limiting substantive protections of the due process clause); *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020) ("We have repeatedly declined to recognize the state-created danger doctrine in this circuit.").

The only related doctrine embraced by the Fifth Circuit is the special-relationship exception, which holds that when there is a special relationship between the individual and the state, such as in the context of incarceration, involuntary institutionalization, and the placement of children in foster care, this relationship imposes "a constitutional duty to protect that individual from known threats of harm by private actors." *McKinney*, 309 F.3d at 313; *see also Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990). This case does not involve a special relationship recognized by the Fifth Circuit.

Finally, Defendant argues that the Court should embrace the defense of outrageous government conduct here, not based on the entrapment line of case law cited above or the special-relationship exception, but based on the Supreme Court's deliberate-indifference standard articulated in *Rochin v. California*, 342 U.S. 165 (1952). The Court should also reject this argument. In *Rochin*, the Supreme Court recognized a shock-the-conscience standard under the substantive due process clause where police officers arrested the defendant and ordered doctors to pump his stomach to induce vomiting to obtain evidence of possession of morphine. *Rochin*, 342 U.S. at 166, 172. Because the conviction of the defendant was obtained by methods offending the Due Process Clause, the Supreme Court reversed the defendant's conviction. *Id.* at 174.

According to Defendant, the Government's conduct shocks the conscience here because the Government was on notice of the life-threatening danger to migrants presented by the alleged

conspiracy and failed to act to prevent death and serious bodily harm by shutting down the smuggling ring when it had the opportunity to do so. Conduct that shocks the conscience and is therefore violative of substantive due process is conduct that "violates the decencies of civilized conduct" and "is so egregious, so outrageous" that it "interferes with rights implicit in the concept of ordered liberty." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012) (internal quotations and citations omitted).

Defendant argues that the Fifth Circuit has suggested that a "due process conscience-shocking claim may be separate from a state-crated danger theory." (Reply [#302], at 6 n.1.) But the Fifth Circuit in *Doe* expressly warned that courts "must be careful *not* to read the *Rochin* shocks the conscience standard as a separate exception" to the principle that states cannot be held constitutionally liable for a failure to protect individuals against private violence "save for the special relationship theory and, in some circuits, the state-created danger theory." *Doe*, 675 F.3d at 868–69 (emphasis added). The Fifth Circuit emphasized that a party must first demonstrate a constitutional duty to protect before being able to argue that certain conduct shocks the conscience under *Rochin*. *Id.* at 869. The Fifth Circuit has not recognized any duty to protect the migrants who tragically died as a result of this human-smuggling organization that could give rise to substantive due process protections for the migrants themselves. Nor is there any legal basis for that right, even if it existed, to be extended to Defendant, an alleged willing participant in the alien smuggling operation, such that his indictment should be dismissed.

Defendant has requested a hearing on his motion and the opportunity to present evidence of the evidence in the Government's possession prior to the death of the migrants underlying Defendant's indictment. In light of the clearly established precedent in this Circuit foreclosing

the relief Defendant requests in his motion, the Court declines to hold an evidentiary hearing on Defendant's motion.

### III. Constitutional Challenge to Penalty Elements

By his second motion to dismiss, Defendant asks the Court to dismiss the penalty elements of 8 U.S.C. § 1324(a)(1)(B)(iii) and (iv) on the basis that they are unconstitutionally void for vagueness in violation of due process. Defendant is not contesting the base offense under 8 U.S.C. § 1324(a) of transporting aliens. The base offense carries statutory maximum sentences of either 5 or 10 years in prison. *See* 8 U.S.C. § 1324(a)(B)(i)–(ii). Defendant challenges the statutory penalty enhancements for transporting aliens "during and in relation to which the person causes serious bodily injury . . . to, or places in jeopardy the life of, any person," which enhances the statutory maximum to 20 years in prison, and for transporting aliens "resulting in the death of any person," which is punishable by life imprisonment or the death penalty. *See id.* §§ 1324(a)(B)(iii), (iv).

"It is a basic principal of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Defendant argues the penalty enhancements for 8 U.S.C. § 1324(a) are unconstitutionally vague because the statute does not include a causation standard and therefore does not provide fair notice as to what standard triggers either penalty. *See, e.g.*, *United States v. Alvarado-Casas*, 715 F.3d 945, 952 (5th Cir. 2013) (For the penalty enhancements at issue, the Fifth Circuit has

stated that "we . . . still need to decide the degree of causation required (e.g., direct causation, but-for causation, substantial-factor causation, command causation, proximate causation, etc.), an issue not resolved by the plain language of the statute or our construction hitherto of it.").

Defendant provides several hypothetical examples of bodily injury or death occurring during the transport of aliens that could theoretically fall under the statute but would not be reasonably foreseeable to a person of common intelligence.  For example, the "any person" language in the statute could impose punishment for causing death or injury to any third person, including a pedestrian walking through a crosswalk, another motorist, or a worker in a roadside construction zone.  Additionally, Defendant notes that the statute does not contain any exemption for risks inherent in all vehicular traveler, meaning a safe-driving alien smuggler could be prosecuted if he or she had the misfortune of killing or harming the aliens or any other third person in any traffic accident even if he was not the cause of the accident.  Defendant argues the statute is particularly problematic because the base offense of transporting aliens does not contain a requirement that the transport of aliens be reckless or even negligent.

Although it is theoretically possible that a prosecution under the enhanced penalty provisions of 8 U.S.C. § 1324(a) could stretch the statute to the outer bounds of its reasonable application, this is not that case.  Because vagueness arguments hinge on notice, an objection that a law is unconstitutionally vague "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).  As applied to him, both penalty provisions provided notice that a death or serious bodily injury resulting from this smuggling venture would open the door to increased penalties.  Defendant need not prove that Sections 1324(a)(B)(iii) and (iv) are constitutionally vague in all their applications, but he still

must show "that the statute is vague as applied to his particular conduct." *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 584 U.S. 901 (2018) (quoting *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016)). Defendant has not made and could not prevail on this argument.

Defendant is accused of playing a central role in the alleged conspiracy of transporting undocumented migrants. The Government contends that the migrants were stripped of most of their belongings, including cell phones, before being closed into the trailer; were not provided safety restraints or an ample supply of water; were unable to open the trailer doors during transport, as the doors were locked from the outside; were transported during the hot summer months for three hours along the highway between Laredo and San Antonio; and suffered death or serious bodily injury due to heat exhaustion during transport. Transporting migrants in this manner clearly carried significant risks to which an ordinary person would have been aware. Defendant cannot show and has not argued that the enhanced penalty provisions of Sections 1324(a)(B)(iii) and (iv) were unconstitutionally vague as to the death and bodily injury of aliens transported in the manner alleged in this case. "[E]ven if a statute might be vague when applied to some situations, a defendant whose conduct is clearly prohibited cannot be the one making that challenge." *United States v. Thomas*, 877 F.3d 591, 599 (5th Cir. 2017) (internal quotation and citation omitted).

Defendant argues that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), and its progeny changed the rule that a defendant whose conduct is clearly prohibited cannot be the one challenging a statute as void for vagueness and that he can raise a facial challenge to the statutory penalty enhancements regardless of whether they are

9

unconstitutionally vague as applied to his conduct.[1] But the Fifth Circuit squarely rejected this assertion in *Westbrooks*, a case that was vacated on other grounds, as have the majority of other circuit courts of appeals. *See* 858 F.3d at 325 (Although a statute "is not saved by the fact that some conduct clearly falls within a statute's prohibition, . . . *Johnson* did not change the rule that a defendant whose conduct is clearly prohibited cannot be the one making that challenge."); *see also United States v. Morales-Lopez*, 92 F.4th 936, 942–44 (10th Cir. 2024) (facial vagueness challenges prohibited by those whose conduct is clearly proscribed by the statute); *United States v. Hasson*, 26 F.4th 610, 619–20 (4th Cir. 2022) (same); *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020) (same); *Bramer*, 832 F.3d at 909 (same); *Kashem v. Barr*, 941 F.3d 358, 375–76 (9th Cir. 2019) (same). And as the Government points out, even after *Johnson*, the Supreme Court has reiterated that a litigant clearly covered by a law may not raise a facial vagueness challenge. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 48–49 (2017) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim.").

Based on the facts alleged in the indictment, Fifth Circuit precedent forecloses Defendant's ability to raise a facial vagueness challenge. As such, the Court has not considered the merits of Defendant's facial vagueness challenge. This recommendation does not prohibit Defendant from raising an as-applied challenge at a later date if he believes the facts adduced at trial provide a basis to do so.

---

[1] *Johnson* held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (providing enhanced penalties for individuals with three or more convictions for a "violent felony") violated the Due Process Clause because the residual clause's definition of "violent felony" was void for vagueness. *Johnson v. United States*, 576 U.S. 591, 606 (2015). The defendant in *Johnson* had been convicted of unlawful possession of a short-barreled shotgun in Minnesota. *Id.* at 594.

## IV.  Conclusion and Recommendation

Having considered Defendant's motions, the responses and replies thereto, and the governing law, the undersigned **recommends** that Defendant's Motion to Dismiss or Suppress for Outrageous Government Conduct [#285] and Defendant's Motion to Dismiss Charging Statute's Penalty Provisions as Void for Vagueness [#286] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

    SIGNED this 6th day of November, 2024.

                                               ELIZABETH S. ("BETSY") CHESTNEY
                                               UNITED STATES MAGISTRATE JUDGE