UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HOMERO ZAMORANO (1),<br><br>Defendant. | No. SA-22-CR-366-OLG |

### UNITED STATES' SENTENCING MEMORANDUM

Defendant, Homero Zamorano, was the driver of a tractor-trailer in the back of which 53 aliens perished. Despite hearing the trapped migrants' repeated cries for help, Defendant did nothing. This Court should accordingly sentence Defendant to life imprisonment.

**I.   Background and Defendant's Conduct**

On June 27, 2022, law enforcement responded to the scene of an abandoned tractor-trailer along an isolated road in southwest San Antonio. PSR ¶¶ 18-20. Upon arrival, they discovered 53 migrants in the back of the trailer who were either dead on site or would soon die. PSR ¶ 18. Eleven other migrants survived. *Id*. It was the deadliest alien smuggling incident in modern United States history.

Zamorano was the driver of the tractor-trailer on that fatal day and was found hiding unconscious in the brush nearby. PSR ¶ 20. Significant subsequent investigation pieced together the smuggling organization's prior smuggling ventures. It was discovered that Zamorano had driven tractor-trailer loads of aliens in the same manner three times prior. PSR ¶ 10.

**II.   Legal Standard**

The "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" because the Guidelines form the "starting point and the initial

1

benchmark" for crafting an appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). However, the Court is required to "make an individualized assessment based on the facts presented" and "may not presume that the Guideline sentence is reasonable." *Id.* at 49-50. In so doing, the Court must consider all the § 3353(a) factors. *Id.* If the Court imposes an outside-Guideline sentence, the Court must "ensure that the justification is sufficiently compelling to support the degree of the variance…. [A] major departure should be supported by a more significant justification than a minor one." *Id.*

The goal is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" articulated in 18 U.S.C. § 3553(a), including the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[1]

In so doing, the Court must consider all the § 3353(a) factors, including:

> "The nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the kinds of sentence and the sentencing range established … in the guidelines…"; "any pertinent policy statement" in the Guidelines; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense."

*Gall*, 552 U.S. at 49-50. The Court may also consider any aggravating circumstances not adequately taken into consideration by the Sentencing Commission. *See* 18 U.S.C. § 3553(b)(1).

---

[1] Note however, "the Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation." *Tapia v. United States*, 564 U.S. 319, 321 (2011).

### III.  Multiple factors support the appropriateness of a life sentence.

The United States asks the Court to adopt the factual findings and recommendations in the PSR as revised on February 11, 2026.[2] Evidence from the trial of Zamorano's co-defendants, the factual basis agreed to by Zamorano, and the PSR provide sufficient factual detail and indicia of reliability for the Court to find that the facts asserted are accurate. *See United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013). Considering the Guidelines and the compelling § 3553(a) factors, the Court should impose a sentence at the top end of the recommended guideline range: life.[3]

### A.  There are 53 reasons justifying a life sentence.

Defendant's recommended guideline range is based upon a single death. *See* PSR ¶¶ 35-36. That is, the Guidelines fail to account for a situation where *multiple* deaths occurred, much less an exponential 50-fold death increase such as this. But a court may increase the sentence above the recommended Guideline range in appropriate instances, such as where multiple deaths resulted. *See United States v. Rodriguez*, 553 F.3d 380 (5th Cir. 2008) (affirming an upward departure where nineteen aliens died because of being transported in an overcrowded tractor-trailer, noting that the Guidelines "expressly contemplate upward departures where multiple deaths occur").[4] Here, 53 migrants horrifically died of hyperthermia—essentially cooking alive—

---

[2] The PSR recommends a total offense level of 42 and a criminal history category of III, resulting in a guideline imprisonment range of 360-Life. This recommendation denies Defendant any acceptance of responsibility reduction. But even if the Court grants Defendant a two-point reduction under USSG § 3E1.1(a) for acceptance of responsibility, the recommended guideline range does not change (TOL 40 + CHC III = 360-Life).

[3] Specifically, the United States asks the Cour to impose a Life sentence on Counts 1 and 2, and 20 years on Count 3 because the maximum term of imprisonment for Count 3 is capped at 20 years by statute. *See* 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(II), and (a)(1)(B)(iii).

[4] The Guidelines provision expressly contemplating this upward departure (5K2.1) was deleted from the Guidelines effective November 1, 2025. This deletion was part of a simplification of the Guidelines Manual that included deleting all departure provisions. But the Sentencing Commission specifically noted that it did not intend for the removal of the departure provisions to be interpreted as a view that those factors are no longer relevant considerations in sentencing. *See* Introductory Commentary to U.S.S.G. §1A1.1 at

because of travelling in the back of a locked tractor-trailer on June 27, 2022. PSR ¶ 26. One of those migrants was pregnant. PSR ¶¶ 18, 26. And 11 others endured the same harrowing conditions but survived, suffering varying effects including memory issues, night terrors, and post-traumatic stress disorder. PSR ¶ 27.



*Deceased and Survivors from June 27, 2022, event (from Government's Trial Exhibits 1101-B and 1101-C).*

Given that the Guidelines fail to account for the loss of 53 lives and endangering 11 others, it is therefore appropriate—and just—to sentence Defendant at the high end of the recommended guideline range and assess a life sentence.

### B. Defendant's extreme conduct warrants a life sentence.

Most egregiously, Zamorano's knowledge of the malfunctioning reefer unit on June 27—and his indifference in responding to the aliens' cries for help—warrants a life sentence by itself.

---

paragraph 5. To the contrary, the Commission intended for "judges who would have relied upon facts previously identified as a basis for a departure . . . to continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. 3553(a)." *Id*. It is thus proper for this Cour to consider this factor.

4

As the Court will recall from trial testimony, the trailer became unbearably hot on the June 27 drive to San Antonio because the reefer unit was not working properly. PSR ¶ 16-18. As a result, chaos ensued. PSR ¶ 17. Some aliens screamed and banged on the walls for help. *Id*. Others kicked and clawed at the sides of the trailer, attempting to escape. *Id*. And evidence of these desperate attempts was forever etched into the sides of the inside trailer walls:



*Government's Trial Exhibits 136, 138, 139, and 140.*

In response, Zamorano stopped multiple times and reset the reefer unit, demonstrating his awareness of the situation. PSR ¶ 18.

5



*From the trial testimony of Christian Martinez.*

The migrants' screams for help from inside the sweltering trailer were likewise relayed:



*From the trial testimony of Christian Martinez.*

But despite being the only person on scene, and thus the only person in a position to provide immediate assistance to those yelling for help, Zamorano did nothing. Instead, he told the migrants

that they were almost there:



*From the trial testimony of Greysi Sanjay-Bacajol*

That callous lack of response was life-depriving and life-altering, and the sort of conduct previously contemplated by § 5K2.8 of the Guidelines.[5]  Because the conduct was unusually heinous, cruel, and caused prolonged suffering to the point of death, the Court should impose a life sentence.

### C. Zamorano transported more than 100 aliens in the back of tractor-trailers.

An upward departure—or a sentence at the high end of the guideline range when that high end is life (as in this case)—may also be warranted in instances where a defendant smuggled or transported "substantially more than 100 aliens."[6]  Over just four trips culminating with June 27, 2022, Zamorano personally transported well over 100 aliens.  The organization he worked for transported aliens in the back of tractor-trailers at least 17 times:

---

[5] Like 5K2.1, this upward departure provision was deleted from the Guidelines effective November 1, 2025. But as explained in Footnote 4, this Court is still able to rely on this factor when determining the appropriate sentence.

[6] Like 5K2.1 and 5K2.8, this upward departure consideration (notated in Application note 7 of USSG § 2L1.1 in prior Guidelines manuals) was deleted from the Guidelines effective November 1, 2025.  As explained above, this Court is still able to rely on this factor when determining the appropriate sentence.



*Timeline depicting the loads of aliens transported in tractor-trailers by Orduna-Torres' organization over the eight months leading up to June 27, 2022 (from Government's Trial Exhibit 3-AA).*

Six of those loads were interdicted at U.S. Border Patrol checkpoints, revealing loads that numbered 60, 63, 78, 107, 98, and 71 migrants (outlined in red above). Thus, using the smallest

load of aliens the organization moved (60), and extrapolating that to the three loads Zamorano drove that were not interdicted, Zamorano personally, conservatively, transported at least 244 aliens in just one month.[7]  That's *two and a half times* the maximum Guideline adjustment.  *See* USSG § 2L1.1(b)(2)(C) (providing a maximum 9-level Guideline increase when more than 100 aliens are transported).  Defendant's repeated involvement in transporting more than 200 migrants in the back of his tractor-trailer thus further justifies a life sentence.

### D.  Additional 18 USC § 3553(a) factors also support a life sentence.

#### a.  Defendant's criminal history score is understated.

Defendant's criminal history category—although correctly calculated—understates Defendant's criminal history.

First, Defendant has three convictions, including felony burglary of a habitation, that are unscored because the convictions occurred more than 15 years prior to this offense.  PSR ¶¶ 48-50.  In the burglary case, Defendant admitted to police that he stole a television from his neighbor's home in order to buy more cocaine after "snorting" all that he had.  PSR ¶ 49.  Together, these convictions provide a more accurate account of Defendant's criminal conduct over more than 25 years, which the Court should assess when determining the appropriate sentence.

Second, Defendant's arrest history further supports that his criminal history score is understated.  *See U.S. v. Chiasson*, 90 F.4th 832 (5th Cir. 2024) (holding that although arrests are not included in criminal history, a sentencing court may consider prior criminal conduct that resulted in an arrest but not conviction if the record contains information with "sufficient individual of reliability" regarding the defendant's conduct that led to the arrest).  Here, the PSR

---

[7]     64 aliens (*from June 27 load*)
 + 180 aliens (*60 aliens per load x 3 non-interdicted loads*)
    244 aliens

details criminal conduct, including two burglaries and two family violence assaults, that Defendant has been arrested for over 20 years. *See* PSR ¶¶ 55-57, and 59. Because there are sufficient details provided about those arrests in the PSR, the court should properly consider them when determining an appropriate sentence. *See U.S. v. Zarco-Beizak*, 24 F.4th 477 (5th Cir. 2022) (permitting a court to rely on arrest records so long as they are not "bare" or without corresponding information about the facts that led to the arrest). This court should particularly consider Defendant's more recent pattern of family violence—conduct committed in his 40s, well beyond the time he can blame immaturity—when fashioning an appropriate sentence. *See* PSR ¶¶ 57, 59.

Because none of the convictions and arrests referenced in the above two paragraphs were scored in calculating Defendant's criminal history level, his criminal history score is understated. The Court should consider this understatement in determining the appropriate punishment.

### b. The seriousness of the offense, respect for the rule of law, and just punishment warrant a life sentence.

This is not a rudimentary alien smuggling case. And the catastrophic result of Defendant's smuggling venture is (thankfully) unparalleled. When fashioning an appropriate sentence, the Court should consider the pivotal role Defendant performed as the driver of tractor-trailers and the nature in which the migrants were transported by the Defendant.

Each time, the migrants were packed into the back of the trailer, unrestrained and often intertwined, without any way to escape. *See* PSR ¶ 16. Seasoning was spread throughout the trailer to mask the smell of humans and subvert K-9 detection dogs—the seasoning stung the migrants' eyes and relentlessly burned their skin. PSR ¶ 7. Migrants—men, women and children alike—were often forced to intertwine because of how many were transported in a single load. PSR ¶ 16.



*Photos of migrants from organization loads interdicted at U.S. Border Patrol Checkpoints (Government's Trial Exhibits 411, 507, 606, 709, 811, & 914).*



*Orduna-Torres exchanged pictures of migrants he smuggled, such as these, to ensure proper accounting and cartel payment (from Government's Trial Exhibit 1019).*

And because of the nature of the trailers the organization used most of the time—refrigerated trailers meant to haul perishable items—there was no outside ventilation. PSR ¶ 16.

11

This was increasingly problematic as summer approached—on June 27, the outside temperature during the smuggling venture was in the mid-90s. PSR ¶ 17. But the organization persisted nonetheless. And Defendant's repeated involvement—four separate journeys—gave him a heightened awareness and understanding of the known risks the organization undertook, including the method of transport in the back of locked tractor-trailers. The organization's ultimate failure is thus similarly attributable to Defendant, making a life sentence appropriate to reflect the seriousness of the offense, promote the rule of law, and impose just punishment.

### c. A life sentence provides adequate deterrence and protects the public from further crimes of the Defendant.

Alien smuggling is not unique to the Defendant and his co-conspirators. It's big business and is particularly prominent along the U.S./Mexico border. Profits are routinely prioritized over people. Risks are routinely endured for the sake of business. A life sentence would send a message that engaging in alien smuggling carries significant risk and help deter others from smuggling people in the future, or at least from utilizing tractor-trailers to do so.

### d. A life sentence avoids an unwarranted sentencing disparity.

Defendant's actions—transporting migrants in the back of a tractor trailer and then refusing to unlock the trailer as they cried for help while they suffocated to death—led to the deaths of 53 people. His actions are unparalleled. But the Court can look to one defendant somewhat similarly situated in the Western District of Texas to ensure appropriate proportionality and avoid the sort of unwarranted sentence disparity contemplated by 18 U.S.C. § 3553(a)(6). In 2017, James Bradley was prosecuted for transporting migrants in a tractor trailer during which 10 aliens died in the back of the trailer due to lack of ventilation. *See* SA:17-CR-00649-OLG. Bradley pled guilty[8] and, like Defendant, his criminal history score resulted in a criminal history category of III.

---

[8] James Bradley pled guilty to two counts (Conspiracy to Transport Aliens Resulting in Death &

*See id*. at ECF Doc. 197. Bradley was sentenced to life imprisonment. *See id*. at ECF. Doc. 213. Because this Defendant's actions resulted in more than *five times* as many deaths as in Bradley's case, equities further support this Court imposing a life sentence here to avoid an unwarranted sentence disparity.

## CONCLUSION

A life sentence is warranted given the facts of this case and Defendant's refusal to open the trailer's door on June 27 despite hearing the migrants' cries for help. This Court should find that a sentence at the high end of the Guidelines is appropriate and sentence Defendant to Life imprisonment on Count 1, Life imprisonment on Count 2, and 20 years' imprisonment on Count 3, running each of the sentences concurrent to each other, to reflect the 53 lives he abruptly ended, the other relevant § 3553(a) factors, and to provide appropriate proportionality.

The United States also asks the Court to find that it would impose the same sentence regardless of the guidelines calculation, or any error in the guidelines calculations, finding that, when considering all the 3553(a) factors, Life imprisonment is the appropriate sentence.

---

Transportation of Aliens Resulting in Death) and was sentenced to concurrent life sentences.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

_____/s/_____.
ERIC J. FUCHS
Assistant United States Attorney
Texas Bar No. 24059785
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7445

_____/s/_____.
SARAH SPEARS
Assistant United States Attorney
Texas Bar No. 24117197
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent to the parties of record via the CM/ECF filing system.

_____/s/_____.
ERIC J. FUCHS
Assistant United States Attorney