UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CAUSE NO. 5:22-CR-00366-OLG |
| § | |
| HOMERO ZAMORANO, JR. § | |

**DEFENDANT HOMERO ZAMORANO'S SENTENCING MEMORANDUM**

TO THE HONORABLE ORLANDO L. GARCIA, UNITED STATES DISTRICT JUDGE:

Homero Zamorano Jr. pled guilty to serious offenses arising from a tragic human smuggling operation that resulted in the deaths of 53 migrants. While the extreme gravity of the offense is obvious, this memorandum explains how Zamorano's limited role and significant cognitive impairments weigh in favor a sentence that does not exceed three-hundred-sixty (360) months or thirty (30) years.

## BACKGROUND

Zamorano was the seventh and last driver. From 2021 to 2022, the smuggling organization worked for successfully transported over 1,000 migrants in the back of tractor-trailers from Laredo to San Antonio.[1] Zamorano's only qualifications were that he knew how to drive a big truck and he desperately needed money. On his fourth trip, the organization gave him a tractor-trailer with a broken refrigeration unit. The conspirators knew the refrigeration unit was broken. No one told Zamorano. He discovered this on his way back to San Antonio. Zamorano tried to restart the refrigeration unit and failed. The trailer was sealed and locked shut and Zamorano was unable to

---

[1] From November 2021 through June 2022, six prior load drivers for the smuggling operation were arrested hauling migrants in the back of tractor-trailer rigs at checkpoints north of Laredo. PSR ¶ 10. Several drivers made multiple trips before their arrest.

open it. Load drivers never opened the trailer doors. He called his bosses and they ordered him to continue. He obeyed. Fifty-three migrants lost their lives as a result.

Neuropsychological evaluations by Dr. Robert Ouaou establish that Zamorano has significant cognitive impairments.[2] He has a full-scale IQ of 81 (low average, functioning at 10% of the adult population his age) and suffers from deficits in executive functioning. These deficits impaired Zamorano's ability to process complex information, adapt to changing circumstances, and make sound decisions under stress. They "likely contributed to him continuing to drive despite the problems with the trailer" and made him "vulnerable to obeying authority figures, even when the instructions given may have conflicted with his personal conscience."

Zamorano was at the bottom of the smuggling organization's hierarchy. He received the lowest pay and undertook the greatest risk. He played no role in the planning or organizing of the smuggling events and exercised no decision-making authority. He lacked any commercial truck driving experience and had never received training on the operation of tractor trailers. His only job was to drive a tractor-trailer from point A to point B. On the previous three trips, the organization had supplied Zamorano with a refrigeration unit that functioned properly and the trips were all successful.

**ARGUMENT**

The sentencing factors set forth in 18 U.S.C. § 3553 (a) are discussed below. They support a sentence not to exceed 30 years.

---

[2] These have previously been provided to the Court as Exhibits One and Two to Zamorano's Supplemental Objections dated February 10, 2026.

### A. The nature and circumstances of the offense (§ 3553(a)(1))

Zamorano participated at the bottom of the organizational hierarchy. He did not create the dangerous conditions that led to the tragedy. He did not know that the refrigeration unit was broken until he was on his way back from San Antonio. When he became aware of problems, he attempted to address the situation by resetting the refrigeration unit. When he later heard the migrants in acute distress, he contacted his bosses but was ordered to continue driving because they were "almost there." His ability to intervene was further limited by the fact that the trailer doors were sealed shut. These facts demonstrate that while Zamorano participated in the offense, he did not create the deadly conditions that resulted in the death of the migrants.

In addition, the government's failure to arrest Christian Martinez before he hired Zamorano was a "but for" cause of the tragedy. This does not absolve Zamorano of guilt for his direct and ultimate role in causing deaths. But Zamorano's intervening failure to act does not excuse the government's failure to act and to allow the conspiracy to continue. Inquiry into the broader causal context addresses the interests of justice. The environment in which criminal conduct unfolds shapes individual culpability. Here, federal authorities knew well before Zamorano got behind the wheel that Martinez was a recruiter of load drivers for the smuggling operation. The government also knew that the organization transported migrants in hazardous tractor trailers where death could result. The catastrophic loss of life was therefore reasonably foreseeable to the government agents. This failure to act formed the conditions under which this offense occurred and bears on Zamorano's relative culpability.

Zamorano does not blame law enforcement or suggest that he is less than fully responsible for his own conduct. He accepted responsibility by pleading guilty and admitting to both the facts in the indictment and the government's factual basis. Yet the law has long recognized that

3

responsibility can be shared. Comparative fault balances blame and accountability among actors. The government cannot turn away from its role in allowing the conspiracy to continue without denying the migrants and their families a true accounting of what caused these deaths to result.

### B    The history and characteristics of the defendant (§ 3553(a)(1))

Zamorano's case presents significant mitigating factors related to his cognitive limitations and personal history. Dr. Ouaou's neuropsychological evaluations established that Zamorano has a full-scale IQ of 81 (low average) and significant impairments in executive functioning, planning, mental flexibility, and reasoning that affected his judgment. In his supplemental evaluation, Dr. Ouaou specifically addressed how these limitations affected Zamorano's behavior during the offense:

> Someone within Mr. Zamorano's IQ range typically demonstrates cognitive abilities below the average range. They may have difficulty with abstract reasoning, problem-solving, and complex tasks that require higher-order thinking. [R]esearch suggests that his lower cognitive abilities can make him more vulnerable to gullibility. People with low average to borderline IQ scores may struggle to process complex information, recognize deception, or critically evaluate their environment.

Dr. Ouaou further noted that Zamorano's "intellect and cognitive limitation would predict that he was vulnerable to obeying authority figures, even when the instructions given may have conflicted with his personal conscience."

And Zamorano's methamphetamine use further impaired his decision-making during the offense. His limited education (dropped out after 6th grade) and history of substance abuse provide important context for understanding his involvement in this offense.

### C.    The need for the sentence to reflect seriousness, provide just punishment, and afford deterrence (§ 3553(a)(2))

The extreme seriousness of this offense appears in the tragic loss of 53 lives. This weighs in favor of a lengthy prison sentence. But a just sentence must be proportionate to Zamorano's

4

comparative causal role in the resulting deaths. A sentence of 30 years reflects the seriousness of the offense tempered by Zamorano's limited role and cognitive impairments.

Regarding deterrence, Zamorano's cognitive limitations reduce the relevance of specific deterrence in his case. General deterrence can still be achieved through a 30-year sentence. Potential offenders will see the serious consequences of participating in such crimes. A life sentence for a defendant with Zamorano's limitations fails what justice demands.

### D.  The need to provide rehabilitation (§ 3553(a)(2)(D))

Section 3553(a)(2)(D) requires consideration of the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." This factor is particularly relevant given Zamorano's cognitive limitations and substance abuse history.

Zamorano will benefit significantly from mental health treatment, substance abuse treatment, and educational/vocational training. A sentence that allows for meaningful rehabilitation would serve justice more than a sentence focused exclusively on punishment. Zamorano's receptiveness to treatment, as mentioned in the PSR, suggests that rehabilitation efforts could be effective. *See* PSR ¶ 76.

### E.  The need to avoid unwarranted disparities—and unwarranted similarities (§ 3553(a)(6))

Section 3553(a)(6) requires consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." On the flip side, it is appropriate for the Court to consider "the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated." *Gall*, 552 U.S. at 55 (emphasis in original). This factor weighs in favor of a 30-year sentence.

At the bottom of the organizational hierarchy as a load driver, Zamorano's culpability differs significantly from that of the organizers and coordinators who created the dangerous conditions and directed the operation. The government, in its opening statement of the trial of Orduna-Torres and Gonzales-Ortega said that the drivers, including Zamorano, played the least culpable role in the conspiracy. A sentence of 30-years accounts for Zamorano's limited role and will be consistent with the principle that sentences should be proportionate to culpability.

The government's sentencing memorandum claims that the Court should impose life by comparing Zamorano to the defendant in *U.S. v. James Matthew Bradley, Jr.*, No. 5:17-cr-00649-DAE (WDTX 2017), a transport case in which Bradley (with a criminal history category of III) was sentenced to life for driving a load of migrants from the border to San Antonio, where the A/C unit was malfunctioning and 10 migrants died. But that case is different. There, Bradley did not suffer from cognitive impairments that hampered his ability to appropriately respond to the situation. Zamorano did. The facts indicated nothing other than that Bradley was aware the A/C unit was malfunctioning from the time he started his trip from the border. Zamorano was not aware of the malfunctioning reefer unit until well on his way. There were no claims that Bradley tried to stop to fix the A/C unit. But Zamorano stopped and tried to fix the reefer unit. There were no claims that Bradley stopped and tried to let the migrants out. But survivor testimony suggested Zamorano did. At the end of the trip, Bradley opened the trailer and left, showing he could have opened it anytime. But there is no evidence Zamorano could open the trailer, and the record suggests he could not, with Martinez testifying the drivers never open the doors. Bradley was also the only defendant charged in his case, whereas Zamorano is the lowest-level conspirator charged in his case. Zamorano is not similarly situated to Bradley.

There is another comparison case: *United States v. Williams*, 610 F.3d 271 (5th Cir. 2010). And *Williams* features Fifth Circuit case law, whereas Bradley missed his deadline to file a direct appeal. In *Williams*, the defendant-driver drove a load of migrants in a tractor-trailer featuring a functioning A/C unit. But the driver just chose not to turn the A/C on, despite learning of the migrants' distress as he was driving. He also refused to stop to let the migrants out for hours, though he could have let them out. Eventually, after a trip of over three hours, he parked at a truck stop, opened the trailer doors, detached the truck from the trailer, and drove away. Nineteen migrants died. *See id.* at 274-76. On 39 counts of conviction, the district court sentenced the driver to 405 months in prison, with some 240-month terms on certain counts, all concurrent, for an aggregate sentence of 405 months—or 33.75 years. And the Fifth Circuit affirmed that sentence. *See id.* at 294; *United States v. Williams*, 463 F. App'x 282, 283–84 (5th Cir. 2012) (affirming remainder of sentence after resentencing remand on certain counts); *see also U.S. v. Williams*, No. 4:03-cr-00221-11, at Doc. 2166 (SDTX 2011) (judgment explaining all counts concurrent).

If Williams merited 33.75 years, Zamorano merits 30 years. Unlike Williams, Zamorano did not choose to leave a functioning A/C unit off; he could not fix the reefer unit despite trying. Unlike Williams, there is no evidence Zamorano could have opened the trailer doors, and the record suggests he tried. And unlike Williams, Zamorano has major cognitive limitations that impaired his ability to respond to the tragic situation. A sentence of 30 years is justified, under Zamorano's urged Guideline-range[3] or as a downward variance under the § 3553(a) factors.

---

[3] Zamorano's urged Guidelines calculations, using the migrant transport guideline, result in a total offense level of 36 with all three acceptance-of-responsibility points. Combined with criminal history category III, the guideline range becomes 235-293 months. Without the third acceptance point, the total offense level increases to 37, resulting in a guideline range of 262-327 months. *See* Zamorano's Supplemental Objections dated February 10, 2026. (For the latter calculation, the Supplemental Objections mistakenly list a range of 292–365 months.)

## CONCLUSION

A sentence of 30-years meets the § 3553(a) factors.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender


/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025 / (512) 916-5035 (FAX)
Bar Number: Texas 08135700

/S/ MARK STEVENS
Attorney at Law
310 S. St. Mary's St., # 1920
San Antonio, TX 78205-3192
(210) 226-1433
Texas State Bar Number: 19184200

/S/ ALEX R. ALMANZAN
Federal Public Defender, TXW
300 Convent Street, Suite 2300
San Antonio, TX 78205
210-472-6700
Texas State Bar Number: 24049446

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of February, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of same to the AUSAs of record.

/s/ JOSE I. GONZALEZ-FALLA

/s/ MARK STEVENS

/s/ ALEX R. ALMANZAN

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CAUSE NO. 5:22-CR-00366-OLG |
| HOMERO ZAMORANO, JR. | § § | |

**ORDER**

For the reasons Defendant Zamorano has argued, the Court sustains Zamorano's objections to the PSR and imposes a sentence of _____. Alternatively and additionally, the Court arrives at the same sentence by downward variance.

SO ORDERED on this the _____ day of _____, 2026.

_____
ORLANDO L. GARCIA
United States District Judge